## Catharine Seip's Estate.    Lydia Probst's Appeal.

| 163 | 423 |
| 166 | 110 |
| 163 | 423 |
| 19 SC | [1]164 |
| 163 | 423 |
| 206 | [2]393 |
| 163 | 423 |
| f 211 | [1]580 |

*Evidence—Attorney and client—Privileged communications.*

Where several persons employ the same attorney in the same business, communications made by them in relation to such business, while privileged as to their common adversary, are not privileged inter sese.

*Evidence—Will—Attorney and client—Husband and wife.*

Three sisters were equally interested in having a will declared invalid. The husband of one of the sisters employed an attorney, and managed the litigation.   His wife and one of the sisters were made plaintiffs, and the

other sister was joined with other parties as a defendant. The case was compromised, and a large payment made to the two plaintiffs. The sister whose husband managed the litigation subsequently died, and the sister who was made a defendant claimed from her estate a part of the money paid under the compromise agreement. *Held*, that the attorney in the will contest was competent to testify as to who were the parties he represented, and as to declarations made by the husband showing for whom he acted in making the contest.

*Will contest—Compromise—Interest—Evidence—Presumption.*

In such case the law will presume that all the sisters joined in the compromise upon the same terms and conditions, and that the sum received was to be divided in conformity with the intestate laws. This would shift the burden of proof to the sisters to prove a release of interest, etc.

*Will—Issue devisavit vel non—Compromise.*

No contestant of a will can compromise anything beyond his or her own personal interest in the contest, and can be entitled to no more than his or her distributive share in a sum received by way of general compromise.

Argued Jan. 30, 1894. Appeal, No. 118, July T., 1893, from decree of O. C. Lehigh Co., distributing decedent's estate. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report. Before ALBRIGHT, P. J.

The auditor, E. J. Litchtenwalner, Esq., found among others the following facts:

"George Probst, of the city of Allentown, in said county, died on or about February, 1885, testate. Christiana Knauss, Catharine Seip and Lydia Probst were half-sisters of the said George Probst, and the only half-sisters of George Probst then living. The will of George Probst was probated by the register of wills of Lehigh county. After the will was probated, Nathan Seip engaged John Rupp and T. Metzger, Esqs., as counsel for Catharine Seip, his wife, and Christiana Knauss, for the purpose of contesting the will of George Probst, deceased. A petition was then signed and sworn to by Catharine Seip and Christiana Knauss, and presented to the register of wills of Lehigh county, asking for a revocation of the letters testamentary. This was refused by the register of wills, and an appeal was taken to the orphans' court of Lehigh county, and an issue asked for. After the appeal was taken, an examiner was appointed by the court to take testimony, and a num-

ber of witnesses were examined. The report of the examiner was filed in court, and the issue was refused. An appeal was taken by Catharine Seip and Christiana Knauss to the Supreme Court. Paper-books were prepared. The case was argued in the Supreme Court February, 1886, by Messrs. Rupp and Metzger, Esqs., counsel for the contestants, and by Hon. Edward Harvey, counsel for the proponents. In October, 1886, the Supreme Court reversed the decree of the court below, and awarded an issue. An issue was framed in the Court of Common Pleas of Lehigh county, to No. 28, Nov. T., 1886, in which Catharine Seip and Christiana Knauss were plaintiffs, and the executor of George Probst, deceased, and the legatees and persons in interest were defendants. Lydia Probst's name appeared on record as one of the defendants. Several days before the day fixed for the trial of the issue a settlement was effected. The amount to be paid to the contestants was $10,000 and costs. A jury was called in pursuance of the settlement, no evidence was submitted, and a verdict sustaining the will was rendered. The $10,000 was paid by check payable to the order of John Rupp and T. B. Metzger, Esqs., on December 13, 1865. The $10,000 was deposited in the Second National Bank of Allentown, Pa., to the account of Thomas B. Metzger and John Rupp, attorneys.

"Nathan Seip engaged Messrs. Rupp and Metzger as counsel to contest the will of George Probst, deceased, and paid them a retainer fee. From the inception to the conclusion of the will contest the counsel had all the consultations with Nathan Seip; Mrs. Catharine Seip and Mrs. Knauss were not consulted by the counsel directly, and were only seen by them once or twice during the progress of the contest, at the time when they were examined as witnesses and when the final papers as to the settlement were executed. Nathan Seip consulted the counsel in reference to the appeal to the Supreme Court, made the contract for the printing of the paper-books, and paid counsel fees. Nathan Seip told Mr. Rupp, one of the counsel, at the beginning of the will contest and during the progress thereof, that he was representing Catharine Seip, his wife, and Christiana Knauss in the George Probst will contest, and that the contest was carried on for the benefit of Catharine Seip, Christiana Knauss and Lydia Probst, the three half-sisters of George Probst,

deceased; that they were to share equally in the proceeds recovered by the will contest, and were to contribute towards the expenses incurred.

"In the issue framed in the George Probst will contest in the Court of Common Pleas of Lehigh county, (No. 28, Nov. T., 1886,) Catharine Seip and Christiana Knauss were the only parties on record as plaintiffs, and Lydia Probst was named as one of the defendants on record. Lydia Probst did not contribute anything towards the expenses incurred in the will contest. After a settlement was effected and the $10,000 paid to the counsel for the contestants, the money was deposited in the Second National Bank of Allentown, to the credit of Thos. B. Metzger and John Rupp, attorneys. After deducting counsel fees the money was distributed at the direction of Nathan Seip, and checks drawn in the following amounts to the following persons, viz : $2,100 payable to the order of Catharine Seip; $2,100 payable to the order of Christiana Knauss ; and $600 payable to the order of Edwin Kemp, he having contributed towards the expenses of the will contest; Nathan Seip directed a check to be drawn to his order. This left $2,000, which was the amount fixed upon as the share of Lydia Probst; she not having contributed towards the expenses, her share was to be $100 less than her sisters'. Counsel refused to draw a check payable to the order of Lydia Probst, as she was not a party on record as plaintiff, and then it was arranged between the counsel and Nathan Seip to draw a check for $2,000, payable to the order of Catharine Seip and Christiana Knauss. This was done, and the check was afterwards indorsed by the payees and Nathan Seip, who was the last indorser, and either got the money from bank or credit therefor. Several days afterwards Nathan Seip complained to the counsel that their fees were too high, and Messrs. Rupp and Metzger drew their individual checks for $200 each, payable, one to the order of Catharine Seip, and one to the order of Christiana Knauss. Both checks were handed to Nathan Seip.

"During the progress of the George Probst will contest, and at the time the settlement was consummated and the money paid to the counsel of the contestants, Nathan Seip attended to the business affairs of Lydia Probst, the claimant, receiving money for her and paying bills, and the check whereon the

claim is made was drawn to the order of Christiana Knauss and Catharine Seip, and by them indorsed, and then indorsed by Nathan Seip, who drew the cash from the Second National Bank of Allentown, or deposited the amount to his credit.

"Lydia Probst told Alvin B. Knauss, the accountant, since the death of Catharine Seip, that she, Lydia Probst, did not contribute anything towards the expenses of the George Probst will contest, and did not expect to get anything, until Edward, George and Dr. A. P. Fetherolf told her she had a share to get from the settlement of the will contest, and that they would get the money for her.

"At the time the George Probst will contest settlement was being negotiated, Nathan Seip told Mr. Harvey, the counsel for proponents, 'you know we did not get much, the lawyers took as much as they wanted, and the balance had to be divided among the three sisters, and we have to give Kemp something. There are other parties interested than my wife and Mrs. Knauss. Lydia Probst is in with us, and we must take care of her.'"

The auditor refused to allow the claim of Lydia Probst, citing: Brig Odorilla v. Baizley, 128 Pa. 283; Early v. Rolfe, 95 Pa. 58; Milligan v. Davis, 49 Iowa, 126; Ewell's Evans on Agency, 22; 1 Wait's Actions and Defences, 219, 469; Telephone Co. v. Thompson, 112 Pa. 118; Sahms v. Brown, 4 Pa. C. C. R. 488; Martin v. Rutt, 127 Pa. 380; Burrell Twp. v. Uncapher, 117 Pa. 353; McBride's Ap., 72 Pa. 480; Act of May 25, 1887, P. L. 158, § 5; 1 Whart. Ev., pp. 576–8, 582, 585; 1 Greenl. Ev. §§ 237, 240, 243; Kaut & Reineman v. Kessler, 114 Pa. 603; Hill's Est., 9 Phila. 355; 19 A. & E. Ency. L. 134, 135; Bennett's Est., 8 W. N. 287; Moore v. Bray, 10 Pa. 519; Beltzhoover v. Blackstock, 3 Watts, 20; 1 Coveney v. Tannahill et al., 1 Hill, 33.

Exceptions to the auditor's report were dismissed.

*Errors assigned* were dismissal of exceptions to auditor's report, quoting them; and disallowance of appellant's claim.

*Marcus C. L. Kline, John Rupp* with him, for appellant.— The testimony of Mr. Rupp was competent: Heft v. Ogle, 127 Pa. 249; Hamill v. Supreme Council, 152 Pa. 542; Martin v. Anderson, 21 Ga. 301; Brown v. Payson, 6 N. H. 443; Gower

v. Emery, 18 Me. 79: Beckwith v. Benner, 6 Car. & P. 681;
Heister v. Davis, 3 Yeates, 4; Johnson v. Daverne, 19 Johns.
134; McTavish v. Deming, Anth. N. P. 155; 1 Wait's Actions
and Defences, 472; Beeson v. Beeson, 9 Pa. 279; Levers v.
Van Buskirk, 4 Pa. 309; 1 Whart. Ev. 563; Gillard v. Bates,
6 M. & W. 547; Anesly v. Anglesea, 11 How. St. Tr. 1220;
19 A. & E. Ency. L. 136; Cobdin v. Kendrick, 4 T. R. 432.

The rule has been strictly held that a communication made
by a client to his attorney, not for the purpose of asking his le-
gal advice, but to obtain information as a matter of fact, is not
privileged, and may be disclosed by the attorney, if called as a
witness in a cause: Bramwell v. Lucas, 2 B. & C. 745; Hatton
v. Robinson, 14 Pickering, 416; De Wolf v. Strader et al., 26
Ill. 230; Earle v. Grout, 46 Vt. 113; Childs v. Delany, 1 N.
Y. S. C. 506; 1 Wait's Actions and Defences, 469.

Where two parties select the same attorney, and make their
communications in the presence of each other, in regard to the
same subject-matter, each party waives his right to regard those
communications as confidential, and, in asserting their rights
under the contract, each is entitled to a disclosure of its stipu-
lations: Parish v. Gates, 29 Ala. 254; Goodwin Gas Stove &
Meter Co.'s Ap., 117 Pa. 514.

Continuous acts performed by an alleged agent in and about
the business of his alleged principals, and their recognition of
such acts, are evidence from which an agency may be inferred:
The Odorilla v. Baizley, 128 Pa. 283; Woodwell & Co. v.
Brown & Kirkpatrick, 44 Pa. 121; Early v. Rolfe, 95 Pa. 58;
Mann's Ap., 50 Pa. 375.

Mrs. Seip was bound by the acts of her husband: Mundorff
v. Wickersham, 63 Pa. 87; Brooke v. R. R., 108 Pa. 529; P. R.
R.'s Ap., 86 Pa. 80; Burton's Ap., 93 Pa. 214; Gas. Co. v.
Cook, 123 Pa. 170; Keough v. Leslie, 92 Pa. 424; Gas Lamp
Co. v. Horstmann, 24 W. N. 396; 1 Wait's Actions and De-
fences, 285, 287; Stewartson v. Watts, 8 Watts, 392; Telephone
& Supply Co. v. Thompson, 112 Pa. 118; McFeely v. Little, 19
W. N. 97.

What knowledge or fact Mr. Seip communicated to others
in his capacity as agent for Mrs. Seip is not protected by the
provisions of the act of May 23, 1887, § 5, P. L. 158: Early v.
Rolfe, 95 Pa. 58; Mann's Ap., 50 Pa. 375; 2 Whart. Ev., p. 434,

§ 1217 ; Peiffer v. Lytle, 58 Pa. 386 ; Cornell v. Vanartdalen, 4 Pa. 374 ; Robb's Ap., 98 Pa. 502 ; Stephens v. Cotterell, 99 Pa. 188 ; Conrad v. Conrad, 4 W. N. 2.

*James S. Biery, Thomas B. Metzger* and *Reuben J. Butz* with him, for appellee.—According to the testimony Lydia Probst never thought that she had any valid claim to any of the money that was realized by the settlement. And it is very clear that she was not entitled to any of the money on equitable grounds, because she never consented to be a contestant, and never contributed any money towards the payment of the expenses of that contest.

An agent's authority cannot be shown by his own declarations: Grim v. Bonnell, 78 Pa. 152 ; Whiting v. Lake, 91 Pa. 349 : Relief Assn. v. Post, 122 Pa. 597 ; Pepper v. Cairns, 133 Pa. 114 ; Hays v. Lynn, 7 Watts, 525 ; Trust Co. v. Shultz, 82 Pa. 46 ; Fairlie v. Hastings, 10 Ves. 126.

The declarations of Seip were neither what constituted an agreement of his principal, nor the foundation of or inducement to an agreement, and hence could have no binding force on Catharine Seip: Relief Ass'n v. Post, 122 Pa. 599.

The declarations and representations of an agent, made in effecting an agreement or doing an act within the scope of his authority, are evidence in an action against his principal. But declarations made under other circumstances are not evidence to charge the principal, or to establish the fact of agency: Hannay v. Stewart, 6 Watts, 487 ; R. R. v. Plank Road Co., 71 Pa. 355 ; Fawcett v. Bigley, 59 Pa. 413 ; Hogg v. Orgill, 34 Pa. 348 ; Moore's Ex'rs v. Patterson, 28 Pa. 513 ; Patton v. Minesinger, 25 Pa. 393 ; R. R. v. Books, 57 Pa. 339 ; Bigley v. Williams, 80 Pa. 107 ; Water Co. v. Iron Co., 84 Pa. 279.

The husband was not a competent witness : Martin v. Rutt, 127 Pa. 383 ; Burrell Twp. v. Uncapher, 117 Pa. 353 ; McBride's Ap., 72 Pa. 480 ; Cornelius v. Hambay, 150 Pa. 364.

A lawyer, no matter in what capacity he may be employed, is not permitted to disclose communications made to him by his client in the course of their professional relations : 1 Whart. Ev. §§ 576–9, 581, 585 ; 1 Greenl. Ev. §§ 237, 240, 243 ; Kaut and Reineman v. Kessler et al., 114 Pa. 603 ; Hill's Est., 9 Phila. 355 ; Bennett's Est., 8 W. N. 287 ; Moore v. Bray, 10

Pa. 519 ; 19 A. & E. Ency. 134, 135 ; Beltzhoover v. Black-
stock, 3 Watts, 20 ; 1 Wait's Actions and Defences, 469 ; Cov-
eney v. Tannahill, 1 Hill, 33.

OPINION BY MR. JUSTICE WILLIAMS, Oct. 1, 1894:

The facts to be considered in the determination of this ap-
peal appear in the auditor's report, which was concurred in and
confirmed by the orphans' court.

From this report we learn that George Probst died testate in
February, 1885, leaving a large estate.  He left three half-
sisters to survive him, Christiana Knauss, Catharine Seip and
Lydia Probst.  By his will he gave his estate to certain of his
collateral relatives excluding his half-sisters, and other rela-
tives, from any share whatever therein.

Those who had been excluded, or some of them, determined
to contest the validity of the will; and for these Nathan Seip,
the husband of Catharine, appears to have acted as agent.  He
consulted with and retained counsel, and took general charge of
the preparation and conduct of the proceedings.  An issue
devisavit vel non was framed in which Mrs. Knauss and Mrs.
Seip were named as plaintiffs, and in which Lydia Probst was
named as one of the defendants.  This was upon the, list for
trial and in a position to be reached in a few days when it was
settled upon the payment of ten thousand dollars to the attor-
neys for the contestants.

The question now raised is to whom did the money paid by
the proponent belong?  Lydia Probst alleges that she was en-
titled to share with her sisters in it, and they now claim the
whole.  This controversy was referred to an auditor who sus-
tained the contention of the accountant that Lydia Probst was
not entitled to share in the money obtained by the settlement.

It should be remembered that the three sisters stood in the
same position.  They had certain rights under the intestate
laws that the will denied.  If the estate of George Probst was
to be distributed under his will, they were all alike excluded.
If the will was set aside they would be admitted on exactly
the same terms regardless of their apparent position on the rec-
ord as parties to the issue, and of their contribution to the ex-
penses of the contest.  But the auditor and the court below held
that the right of Lydia Probst to a share with her sisters de-

pended on the answers to two questions: First, was she "an active contestant on record with Mrs. Seip and Mrs. Knauss? Second, did she contribute towards the expenses in carrying on the contest with the understanding that she should share in the proceeds realized?" The evidence relied upon to show that she was a contestant, and had promised to contribute to the expenses consisted of the testimony of John Rupp, Esq., one of the counsel for the contestants, and the declarations of Nathan Seip, now deceased, made while the contest was being carried on and while it was in process of settlement. The testimony of Mr. Rupp was excluded because of his confidential relations to Mrs. Seip and Mrs. Knauss. The declarations of Nathan Seip were excluded because he was the husband of the decedent whose estate is now for distribution. The whole of the evidence relating to the questions stated by the auditor being thus taken out of the case, the questions were decided against Lydia Probst, and the two sisters were allowed to retain the share of the third in the money realized from the settlement of the issue devisavit vel non. Was John Rupp properly excluded on the ground of privilege? He is an attorney at law and was employed as counsel for the contestants. If the issue had been on trial and the proponent had undertaken to examine him about what Blackstone calls "the secrets of the cause," which had been communicated to him by his clients, it is clear that the clients could have objected, and relied on the fact that communications made by them to their counsel, relating to the cause, were privileged. But this was not a controversy between the contestants and their adversaries. It was a controversy among themselves. Here were three sisters standing in the same relation to the testator, and having the same interest in defeating his will. Two of them appeared as plaintiffs, and the other as one of the defendants, in the issue. Neither of them appears to have consulted counsel personally, but Nathan Seip, the husband of one of them, did all that was done on behalf of the contestants. Whom did he represent? For whom did Mr. Rupp appear? This is the present question. It is a search, not after some communication by client to counsel, but after a fact that could be inquired into on the trial of the issue if such trial had been reached. It could have been settled in advance by a rule on counsel to file a warrant of attorney,

and this at the instance of the adverse party.   It is the fact of
employment that creates the confidential relation.    Until this
relation exists there can be no privileged communication.    The
mere fact of employment is not privileged, but, from the nature
of the relation between client and counsel, it is open to inquiry
in any court in which the counsel appears as such.   So, for a
very obvious reason, the fact of a settlement between litigants,
and the terms upon which it was made, are open to inquiry.
An attorney who assisted in adjusting the terms of such settle-
ment is a competent witness to show what the terms were:
Schubkagel v. Dierstein, 131 Pa. 46.   If an attorney repre-
sents two or more persons he may be called as a witness in a
controversy between them, and statements made to him by
one of them in the presence of the others will not be treated
as confidential or privileged communications: Goodwin Gas
Stove and Meter Company's Appeal, 117 Pa. 514.   And gen-
erally, where several persons employ the same attorney in the
same business, as for example to contest a will, communica-
tions made by them in relation to such business, while privi-
leged as to their common adversary, are not privileged inter
sese : Jackson v. French, 3 Wendell,  337 ; 19 Am. and Eng.
Ency. of Law, page 139 and note.   All have a property in
confidential communications made under such circumstances.
One cannot waive the privilege for his co-suitor nor enforce it
against him : Beltshover v. Blackstock, 3 Watts, 20.   In this
case three sisters had a common interest in defeating their half-
brother's will.   A contest was entered upon.   All of them
were parties to it.   Their position on the record was just what
Nathan Seip chose to make it.   This contest was settled by
him, acting for those interested, for the sum of ten thousand
dollars.

The question now raised is to whom did this money belong?
Not to Nathan Seip, for he could not have taken under the in-
testate laws as an heir of George Probst.   It must go, says the
learned auditor, to those whom Seip represented, and for whom
Mr. Rupp appeared.   To disclose their principals both Rupp
and Seip are competent, and no one of the parties can success-
fully interpose the objection of privilege.   But Seip is now
dead, and his declarations made to Mr. Rupp showing for whom
he acted in making the contest are objected to on the ground

that he is not competent to testify against his wife. But the declarations relate only to his own conduct and are explana-tory of it. They involve no breach of domestic confidence; they relate to no act or contract of his wife; they fix no lia-bility upon her estate. He acted as the agent for his wife, but not for her alone. For whom else did he undertake to act? Who were his principals in the litigation he began, carried on, and finally settled? The auditor finds that he was the agent of Mrs. Knauss as well as of his wife; and in his twelfth find-ing of fact he says: " That during the progress of the George Probst will contest, and at the time the settlement was con-summated and the money paid to the counsel of contestants, Nathan Seip attended to the business affairs of Lydia Probst, the claimant, receiving money for her and paying bills." In other words he was the business agent of Lydia Probst in gen-eral charge of her affairs. We can see no way by which the auditor reached the conclusion that he was not her agent in the management of the contest over the will also, except by re-jecting the testimony of Mr. Rupp and the declarations of Seip, and then holding as matter of law that a compromise which affected the rights of Lydia Probst gave her no interest in the sum received.

We hold that the rejected testimony was competent so far as it was offered to show for whom Seip acted as agent, and for whom Rupp appeared as counsel. This disposes of the ques-tions really raised on this record, but before dismissing the case it may be well to suggest another. Is it true, as the auditor seems to assume, that the money received upon the compromise of a controversy like this belongs only to those who appear as active contestants and contribute money towards the employ-ment of counsel? The statute provides that any person inter-ested may file a caveat, but it is well settled that thereafter the proceedings are not strictly between the parties, but are in the nature of a proceeding in rem; and a decree when made is conclusive on all the world: Ottinger v. Ottinger, 17 S. & R. 142. For this reason it is the duty of the court to see that all persons interested are brought in before a decree is made: Miller's Appeal, 159 Pa. 562. If this is not done, or if a com-promise is effected without notice to any of those interested, and a verdict taken in favor of the will in pursuance of such

compromise, the verdict will be set aside on application of the omitted or neglected party, Hambleton v. Yocum, 108 Pa. 304; or the omitted party may take another appeal if the time allowed has not elapsed : Miller's Appeal, supra.

From this it results that no contestant can compromise anything beyond his or her own personal interest in the contest, and can be entitled to no more than his or her distributive share in a sum received by way of general compromise.   This was said in substance by the late Justice GORDON in the opinion delivered in Hambleton v. Yocum, supra, and seems to result necessarily from the nature of the proceeding.

The interest of Lydia Probst was identical with that of Mrs. Seip and Mrs. Knauss.  ·For what reason she was put upon the record as a codefendant with the proponent of the will that disinherited her, it is probable that no one since the death of Seip can tell.   But wherever her agent placed her on the record, her interest was identical with that of her sisters. She had the same right to appeal from the decree of probate, and the same motive for doing so.   There could have been no settlement made without her consent given personally or through her agent.·  Her acquiescence in its terms was a surrender of her right to contest the will, and her distributive share of the net results of the compromise stood to her in place of her right to contest.   In such case the law would presume her joinder with her sisters in the compromise to have been upon the same terms and conditions assented to by them, and that the sum received was to be divided in conformity with the intestate laws. This would shift the burden of proof and impose on her sisters the duty of showing some contract, release or state of facts, sufficient to rebut the legal presumption and strip her of her rights as " a person interested " in the estate of her half-brother.

The decree appealed from is reversed, the record remitted, and a procedendo awarded.